ZACHARY, Judge.
 

 *249
 
 Douglas Eugene Curlee (defendant) appeals from judgment entered upon his convictions for felonious larceny from a merchant and having attained the status of an habitual felon. On appeal, defendant argues that the trial court erred by finding that, at a hearing conducted two months prior to the date of trial, defendant had refused the appointment of counsel and that defendant was warned at that hearing that if he were unable to hire an attorney, he would have to proceed to trial
 
 pro se
 
 . For the reasons that follow, we agree.
 

 *250
 

 I. *Factual and Procedural History
 

 On 6 February 2013, defendant was arrested and charged with larceny from a merchant, in violation of
 
 N.C. Gen. Stat. § 14-72.11
 
 (2) (2015), which provides that a person "is guilty of a Class H felony if the person commits larceny against a merchant ... [b]y removing, destroying, or deactivating a component of an antishoplifting or inventory control device[.]" On 7 February 2013, defendant completed an affidavit of indigency, requested the appointment of counsel,
 
 *268
 
 and trial counsel was appointed to represent him on the charge of larceny from a merchant. On 19 May 2014, defendant was indicted on the charge that he had attained the status of an habitual felon. On 30 May 2014, defendant signed a waiver of the right to assigned counsel, because he was attempting to hire attorney Michael J. Parker.
 
 [1]
 
 Between May 2014 and May 2015, defendant's trial was continued several times to enable defendant to obtain funds with which to retain Mr. Parker as trial counsel. On 11 May 2015, defendant appeared in court before Judge Kevin Bridges. Mr. Parker informed the court that defendant had not retained him and that, if the court would not agree to continue the case, Mr. Parker would then move to withdraw as defendant's counsel. After some discussion, which is described in detail below, the court agreed to continue the case for two months, to give defendant more time in which to pay Mr. Parker for his representation.
 

 On 29 June 2015, Mr. Parker filed a motion to withdraw as defendant's counsel because defendant had failed to pay for Mr. Parker's representation.
 
 [2]
 
 On 6 July 2015, defendant appeared before the trial court
 
 *251
 
 for a hearing on Mr. Parker's motion to withdraw. The court allowed Mr. Parker's motion to withdraw, and defendant asked for counsel to be appointed. Based upon certain representations by the prosecutor, which are discussed in detail below, the trial court found that on 11 May 2015 defendant had refused Judge Bridge's offer to appoint counsel and had been warned that he would have to proceed
 
 pro se
 
 if he did not hire counsel by 6 July 2015. The trial court found that defendant had waived the right to a court-appointed attorney.
 

 Defendant represented himself at his trial, which began on 7 July 2015, the day after the hearing on Mr. Parker's motion. Following the presentation of evidence, the arguments by defendant and the prosecutor, and the trial court's instructions to the jury, the jury retired to deliberate. While the jury was deliberating, defendant left the courthouse and failed to return. The trial court found that defendant had voluntarily waived his right to be present at all stages of his trial, continued with trial proceedings in defendant's absence, and ordered that defendant's bond be revoked and an order issued for his arrest. The jury returned a verdict finding defendant guilty of larceny from a merchant. A separate proceeding was conducted on the charge that defendant had attained the status of an habitual felon. The jury found that defendant was an habitual felon. The trial court entered a prayer for judgment continued, and explained to the jury that it could not sentence defendant until he was brought before the court.
 

 Defendant was arrested in January of 2016, and appeared before Judge Bridges for sentencing on 29 February 2016. Defendant was sentenced to 103 to 136 months' imprisonment. He gave notice of appeal in open court.
 

 II. Standard of Review
 

 On appeal, defendant does not raise any issues pertaining to the substantive merits of
 
 *269
 
 his conviction of larceny from a merchant or the sentence imposed upon his conviction. Instead, defendant challenges the trial court's denial of his request for appointed counsel, on the grounds that the trial court's findings were not based upon competent evidence.
 

 "It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is
 
 *252
 
 evidence to support those findings. A trial court's conclusions of law, however, are reviewable
 
 de novo
 
 .
 

 State v. Rollins
 
 ,
 
 231 N.C.App. 451
 
 , 453-54,
 
 752 S.E.2d 230
 
 , 233 (2013) (quoting
 
 Mecklenburg Cnty. v. Simply Fashion Stores, Ltd
 
 .,
 
 208 N.C.App. 664
 
 , 668,
 
 704 S.E.2d 48
 
 , 52 (2010) ).
 

 III. Discussion
 

 On appeal, defendant argues that the trial court erred by denying his request for the appointment of counsel, on the grounds that the court's findings were unsupported by competent evidence. In analyzing this issue, we first note that certain relevant facts are uncontradicted, including the following:
 

 1. Defendant was arrested on 6 February 2013, and counsel was appointed to represent him the following day.
 

 2. On 30 May 2014, defendant signed a waiver of the right to appointed counsel.
 

 3. Between May 2014 and May 2015, defendant's case was continued three times to allow defendant time to obtain funds with which to retain attorney Michael J. Parker to represent him.
 

 4. On 11 May 2015, Mr. Parker and defendant appeared before Judge Bridges. Mr. Parker told the court that defendant had not paid him and that if the case were not continued he would move to withdraw. Defendant told the court that he had lost his job but that he expected to be able to pay Mr. Parker in a month and a half. The court continued the case for two months.
 

 5. On 6 July 2015, defendant appeared before the trial court. Mr. Parker moved to withdraw as defendant's counsel because defendant had not fully retained him. Defendant asked for the appointment of counsel. The prosecutor made certain representations to the trial court concerning the proceedings on 11 May 2015. The trial court ruled that defendant had waived the right to appointed counsel.
 

 "An indigent defendant's right to appointed counsel in a criminal prosecution is guaranteed by both the North Carolina Constitution and the Sixth Amendment to the United States Constitution."
 
 State v. Holloman
 
 ,
 
 231 N.C.App. 426
 
 , 429,
 
 751 S.E.2d 638
 
 , 641 (2013) (citation
 
 *253
 
 omitted). However, there are several circumstances under which an indigent defendant may lose the right to appointed counsel. First, a defendant may waive his right to appointed counsel:
 

 A criminal defendant may "waive his [constitutional] right to be represented by counsel so long as he voluntarily and understandingly does so." Once given, however, "a waiver of counsel is good and sufficient until the proceedings are terminated or until the defendant makes known to the court that he desires to withdraw the waiver and have counsel assigned to him." The burden of establishing a change of desire for the assistance of counsel rests upon the defendant.
 

 State v. Sexton
 
 ,
 
 141 N.C.App. 344
 
 , 346-47,
 
 539 S.E.2d 675
 
 , 676-77 (2000) (quoting
 
 State v. Hyatt
 
 ,
 
 132 N.C.App. 697
 
 , 700,
 
 513 S.E.2d 90
 
 , 93 (1999) ). A defendant may also waive the right to be represented by counsel, instead electing to proceed
 
 pro se
 
 . " 'Once a defendant clearly and unequivocally states that he wants to proceed
 
 pro se
 
 , the trial court ... must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel.' "
 
 State v. Blakeney
 
 , --- N.C. App. ----, ----,
 
 782 S.E.2d 88
 
 , 93 (2016) (quoting
 
 State v. Thomas
 
 ,
 
 331 N.C. 671
 
 , 674,
 
 417 S.E.2d 473
 
 , 476 (1992) ). "A trial court's inquiry will satisfy this constitutional requirement if conducted pursuant to N.C.G.S. § 15A-1242
 
 *270
 
 ."
 
 Id
 
 . In addition, a criminal defendant who engages in serious misconduct may forfeit the right to appointed counsel.
 
 Blakeney
 
 , --- N.C. App. at ----,
 
 782 S.E.2d at 93-94
 
 .
 

 Another situation that arises with some frequency in criminal cases is that of the defendant who waives the appointment of counsel and whose case is continued in order to allow him time to obtain funds with which to retain counsel. By the time such a defendant realizes that he cannot afford to hire an attorney, his case may have been continued several times. At that point, judges and prosecutors are understandably reluctant to agree to further delay of the proceedings, or may suspect that the defendant knew that he would be unable to hire a lawyer and was simply trying to delay the trial. It is not improper in such a situation for the trial court to inform the defendant that, if he does not want to be represented by appointed counsel and is unable to hire an attorney by the scheduled trial date, he will be required to proceed to trial without the assistance of counsel,
 
 provided that
 
 the trial court informs the defendant of the consequences of proceeding
 
 pro se
 
 and conducts the inquiry required by N.C. Gen. Stat. § 15A-1242.
 

 *254
 
 [D]efendant neither voluntarily waived the right to be represented by counsel, nor engaged in such serious misconduct as to warrant forfeiture of the right to counsel without any warning by the trial court. As a result, the trial court was required to inform defendant that if he discharged his attorney but was unable to hire new counsel, he would then be required to represent himself. The trial court was further obligated to conduct the inquiry mandated by N.C. Gen. Stat. § 15A-1242, in order to ensure that defendant understood the consequences of self-representation.
 

 Blakeney
 
 at ----,
 
 782 S.E.2d at 98
 
 .
 

 In the present case, the parties have offered arguments regarding,
 
 inter alia
 
 , whether defendant showed "good cause" for withdrawing his waiver of appointed counsel or whether he engaged in behavior that might have supported the trial court's conclusion that he had forfeited the right to appointed counsel. We conclude, however, that on the facts of this case, we are not required to resolve these issues.
 

 Our resolution of this appeal requires review of the hearings conducted in May and July of 2015. At the 11 May 2015 hearing before Judge Bridges, the State was represented by Assistant District Attorney Wendy Terry, and defendant was represented by Michael Parker. Ms. Terry explained the current status of the case to the court:
 

 MS. TERRY: Mr. Parker has, I think, made an appearance for the defendant previously for the purpose of having the case continued so that this gentleman could retain him in full. This is Mr. Curlee's third appearance on the trial list. We continued it so he would have the opportunity of getting his counsel retained the last two times, if it pleases the Court. I have spoken with Mr. Parker. Mr. Parker indicates to me that Mr. Curlee has not been able to make the appropriate arrangements[.] ... I want to address the [issue of] counsel.
 

 Mr. Parker explained that defendant had not paid him the amount required for representation and informed the court that "[i]f your Honor will not continue the case, it will be my motion to withdraw." Judge Bridges discussed the matter with defendant, who informed him that he had lost his job due to repeated absences occasioned by the prosecutor's directive that defendant remain in the courtroom "all week." The court asked defendant if was presently able to retain Mr. Parker, and defendant responded "No sir, not now, I don't." Ms. Terry conceded that
 
 *255
 
 defendant had been asked to be available in case his case was reached on the calendar, but that the State was "not being ugly about it in any way." The court then engaged in the following dialogue with defendant:
 

 THE COURT: Mr. Curlee, how long will it take you to hire your lawyer if I were to give you that time? Are you currently employed?
 

 THE DEFENDANT: I just got another job last week then I have to be in court this week. I don't know what will happen today on that. I would say at least a month, month and a half.
 

 THE COURT: I assume he signed a waiver for the file at some point?
 

 *271
 
 MR. PARKER: He originally had court-appointed counsel, Judge.
 

 THE CLERK: There's a waiver signed.
 

 THE COURT: What was the date of the waiver?
 

 THE CLERK: 6-23-14.
 

 THE COURT: All right. Sir, in June of last year you signed a waiver, I presume, to hire your own counsel. I also presume back when you signed the waiver you were gainfully employed?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: And so the difference would be in the interim you lost your job?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: So if I were to continue the case to give you time, I could continue the case, give you time to hire a lawyer. If I don't continue the case, I presume you still would want some kind of counsel based on the change of circumstances?
 

 THE DEFENDANT: (Defendant nodding.)
 

 THE COURT: Meaning he lost his job in the interim which would delay the case either way. I will grant the motion and keep Mr. Parker at least viable at this point. How long are you telling me it will take to hire your lawyer?
 

 *256
 
 MS. TERRY: There's a July 6th term of court.
 

 THE COURT: July 6th. Mr. Curlee, you need to be ready then, sir. Is he free to go at this time then? Is there anything else that I need to know about that may be pending?
 

 MS. TERRY: No, sir.
 

 THE COURT: You are free to go. Be back July 6th.
 

 The transcript thus establishes that at the 11 May 2015 hearing the judge was informed (1) that after signing a waiver of appointed counsel, defendant lost his job and was not presently able to retain Mr. Parker, (2) that if the case were not continued, Mr. Parker would move to withdraw as counsel, and (3) that, if the court did not continue the case, defendant would "want some kind of counsel based on [his] change of circumstances." The trial court concluded that, regardless of whether the case was continued to give defendant more time to retain Mr. Parker or, alternatively, Mr. Parker was allowed to withdraw, defendant had "lost his job in the interim which would delay the case either way." In other words, there would either be a delay caused by a continuance, or a delay caused by the need to appoint counsel for defendant.
 

 Faced with this situation, the court did
 
 not
 
 seek input from defendant as to whether he would prefer to have counsel appointed or instead to work towards being able to hire Mr. Parker, and the court did not offer to appoint counsel for defendant at that time. Instead, the court decided on its own to continue the case in order to "keep Mr. Parker at least viable at this point." Significantly, at the 11 May 2015 hearing, Judge Bridges did
 
 not
 
 address the possibility that defendant might be unable to retain Mr. Parker even with a continuance. The court told defendant generally to "be ready" for trial on 6 July 2015. However, the court did
 
 not
 
 warn defendant that if he were unable to hire Mr. Parker, defendant would be forced to proceed
 
 pro se
 
 . Nor did the court make any inquiry to ascertain that defendant understood the consequences of representing himself.
 

 On 6 July 2015, defendant appeared before the trial court. Mr. Parker had moved to withdraw due to defendant's failure to retain him, but represented defendant at the start of the hearing, before his motion was granted. The State was again represented by Ms. Terry. At the outset of the hearing, Ms. Terry stated the following:
 

 MS. TERRY: ... Mr. Curlee is number one on the trial list. He was on the trial list term before last in front of the Honorable Judge Bridges. He had not finished-despite
 
 *257
 
 the age of the case-this is a 2013 case-had not finished hiring an attorney. Judge Bridges gave him a two-month continuance so he could do that. In the interim he has not finished paying Mr. Parker. Mr. Parker filed a motion to withdrawal, if it pleases the Court.
 
 Judge Bridges instructed him that he should be ready to go with or without an attorney
 
 . I tender the Court Mr. Parker on his motion.
 

 *272
 
 Ms. Terry's statement to the trial court that Judge Bridges "instructed [defendant] that he should be ready to go with or without an attorney" is completely inaccurate. Judge Bridges did not give defendant such a warning and, in fact, said nothing whatsoever about the possibility of defendant's being forced to represent himself. In response to Ms. Terry's proffer of Mr. Parker to the court, Mr. Parker agreed that defendant's failure to pay him constituted the grounds for his motion to withdraw, and informed the court that he wished to withdraw and that defendant "will have a motion to continue or request a court-appointed counsel." Thereafter, the parties engaged in the following dialogue:
 

 THE COURT: Mr. Curlee, anything you want to say about Mr. Parker's motion to withdraw?
 

 THE DEFENDANT: I have to say then, I lost my job. I just couldn't work. I just started back.
 

 THE COURT: The Court would grant Mr. Parker's motion to withdraw.
 

 MR. PARKER: Thank you, your Honor.
 

 THE COURT: And, Mr. Curlee, did you have any motions at this time?
 

 THE DEFENDANT: I would like to see if the Court could appoint me an attorney.
 

 THE COURT: When did Mr. Curlee sign a waiver?
 

 MS. TERRY: He had appointed counsel. He had Miss Hamilton-Dewitt whom he released. If I can approach with the Court file, I will let your Honor make her own determination in this matter.
 
 I can tell you that Judge Bridges offered Mr. Curlee court-appointed counsel two terms ago. He declined his offer, Mr. Curlee declined and wanted to hire an attorney. Judge Bridges told him he needed to be ready one way or the other this term of court.
 

 *258
 
 Again, Ms. Terry's representation to the trial court was inaccurate and wholly unsupported by anything in the 11 May 2015 transcript. After the trial court heard from Ms. Terry, the hearing continued:
 

 THE COURT: For the record, the Court finds that Miss Hamilton-Dewitt was appointed February 7th of 2013. The case was continued until February 14th of 2013. That the case was continued until such time that on June 23rd, 2013, Mr. Curlee signed a waiver and was given an opportunity to hire an attorney, that the matter has been continued a year.
 
 The Court finds on information and belief that on the last court date, which was two months ago, that Judge Bridges granted a two-month continuance to the defendant. At that time Judge Bridges indicated that the matter would be tried with or without an attorney. That Judge Bridges gave the defendant an opportunity at that time to request a court-appointed attorney. Mr. Curlee indicated he wanted to hire his own attorney.
 
 That as of today he still has not done so. That Mr. Curlee is asking for a continuance and asking for a court-appointed attorney today. However, the Court finds this case is an old case. That it is first on the trial list that was duly published. That this is a 2013 case. The Court finds that Mr. Curlee knowingly and voluntarily waived his right to a court-appointed attorney on a previous court date and that he was given the opportunity to hire an attorney for several court dates.
 
 That he was put on notice two months ago that the case would be heard this term.
 
 The Court would deny the motion for court-appointed attorney.
 

 It is clear from a review of the transcript that the trial court's ruling was based, at least in part, on Ms. Terry's misrepresentation that, at the 11 May 2015 hearing, (1) defendant was asked if he wanted counsel appointed at that point, (2) defendant was warned that the case would be tried in July regardless of whether defendant were able to hire Mr. Parker, and (3) defendant was explicitly warned that if he had not retained counsel by 6 July 2015, he would be forced to proceed to trial
 
 pro se
 
 . None of these representations are accurate.
 

 We wish to be clear that this Court has no basis upon which to believe that Ms. Terry intentionally misrepresented the facts of this case to the trial court, and note that she spoke to the court without the benefit of a transcript. On the other hand, we note that in its appellate brief, the State is less than forthcoming about the history of this matter. For
 
 *259
 
 example, the State asserts that in response
 
 *273
 
 to the trial court's inquiry, Ms. Terry "informed the trial court of the previous hearing, and the declaration of Judge Bridges that the appellant needed to be ready on 6 July 2015." This is a misrepresentation of the facts, and fails to acknowledge that Ms. Terry did
 
 not
 
 simply state that Judge Bridges had told defendant to "be ready" but had instead made several affirmative representations that were inaccurate. Indeed, the State omits
 
 any
 
 mention of either Ms. Terry's statements or the trial court's findings regarding defendant having allegedly been "warned" that he would have to represent himself if he was unable to hire Mr. Parker. As the State
 
 does
 
 have a transcript available for reference, this crucial omission is puzzling.
 

 We also wish to emphasize that we are expressing no opinion on the substantive issues related to the appointment of counsel beyond our holding that the trial court's ruling was not supported by competent evidence. We offer no opinion, for example, on whether Judge Bridges might properly have warned defendant that he would have to proceed
 
 pro se
 
 if he did not hire an attorney, or on whether the trial court might properly have found, if it had been provided with accurate information, that defendant had waived his right to counsel.
 

 We conclude that the trial court's denial of defendant's request for appointed counsel and its ruling that defendant had waived the right to appointed counsel were not supported by competent evidence. "A trial court does not reach a reasoned decision, and thus abuses its discretion, when its findings of fact are not supported by competent evidence."
 
 Point Intrepid, LLC v. Farley
 
 ,
 
 215 N.C.App. 82
 
 , 86,
 
 714 S.E.2d 797
 
 , 800 (2011) (citing
 
 Leggett v. AAA Cooper Transp., Inc
 
 .,
 
 198 N.C.App. 96
 
 , 104,
 
 678 S.E.2d 757
 
 , 763 (2009) ). As a result, defendant's conviction must be
 

 REVERSED.
 

 Judges STROUD and McCULLOUGH concur.
 

 [1]
 

 On 23 June 2014, defendant signed another waiver of counsel on which he checked the box next to the statement "I waive my right to all assistance of counsel, which includes my right to assigned counsel and my right to the assistance of counsel. In all respects, I desire to appear in my own behalf, which I understand I have the right to do." However, there is no other indication in the record that defendant ever expressed a wish to proceed
 
 pro se
 
 , and no record of the inquiry by a trial judge that is required by N.C. Gen. Stat. § 15A-1242 (2015). "The execution of a written waiver is no substitute for compliance by the trial court with the statute[;] [a] written waiver is something in addition to the requirements of N.C. Gen. Stat. § 15A-1242, not ... an alternative to it."
 
 State v. Evans
 
 ,
 
 153 N.C.App. 313
 
 , 315,
 
 569 S.E.2d 673
 
 , 675 (2002) (citations and quotation omitted). Moreover, contrary to the assertion by the State on appeal, the trial court
 
 did not
 
 find that defendant "had previously waived his right to an attorney in court" and did not make findings pertinent to the requirements for determining that a defendant who wishes to represent himself has been properly informed of, and understands, the consequences of his decision.
 

 [2]
 

 Mr. Parker's motion also alleged that defendant had "failed and refused to cooperate with and follow the advice of counsel." However, Mr. Parker did not pursue this contention in court, and there is no record evidence regarding defendant's alleged failure to cooperate with his counsel.